UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X
JUAN LEBRON,                     x
                                 x      06 Civ. 5049 (SWK)
           Petitioner            x      03 Cr. 570 (SWK)
                                 x
           -against-             x      **OPINION AND ORDER**
                                 x
UNITED STATES OF AMERICA,        x
                                 x
           Respondent.           x
---------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

On February 4, 2004, the petitioner pro se, Juan Lebron ("Lebron"), pleaded guilty to one count of felony possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The Court sentenced Lebron to the statutory minimum of 180 months' imprisonment on May 5, 2004. Although Lebron did not appeal from his conviction and sentence, he filed a petition for relief under 28 U.S.C. § 2255, which was received by the Court on June 30, 2006. In the petition, Lebron claims that his counsel was constitutionally ineffective and that his guilty plea was not competent, knowing, and voluntary. For the reasons that follow, the Court denies Lebron's petition in its entirety.

**I.    BACKGROUND**

On May 7, 2003, a grand jury sitting in the Southern District of New York indicted Lebron on one count of possessing a firearm after being convicted of three separate crimes punishable by a term of imprisonment exceeding one year. The

indictment arose out of an altercation involving Lebron and another man. During a consensual search of Lebron's home, police officers recovered a loaded firearm, which Lebron admitted he had brandished during the altercation. After Lebron was placed under arrest, the other party involved in the altercation identified him as the culprit. During a subsequent police interview conducted that same day, Lebron again confirmed that he had brandished a firearm.

After Lebron's indictment, his counsel, Isabelle Kirshner ("Kirshner"), raised concerns regarding her client's competence to stand trial. Upon Kirshner's application, the Court appointed Dr. Sanford Drob ("Dr. Drob") to conduct a competency evaluation on June 19, 2003. Dr. Drob's report, which concluded that Lebron was competent to stand trial and that his state of mind was not impaired at the time he committed the offense in question, was submitted to the Court on November 19, 2003. (Tr. 2, Nov. 19, 2003.) Less than three months later, on February 4, 2004, Lebron pleaded guilty to the charged offense.

During Lebron's allocution, the Court conducted a thorough inquiry into: (1) his competence; (2) his understanding of the charges against him, the consequences of pleading guilty, and his rights; and (3) the voluntariness of his plea. The Court also reviewed the provisions of the plea agreement into which Lebron had entered (the "Plea Agreement"), whereby he waived his

rights to appeal and collaterally attack a sentence at or below the fifteen-year statutory minimum. (Tr. 12, Feb. 4, 2004.) Moreover, at the Court's request, Lebron described his offense conduct. (Tr. 13, Feb. 4, 2004.) The Court then accepted Lebron's guilty plea. (Tr. 14, Feb. 4, 2004.)

On May 5, 2004, the Court sentenced Lebron to the statutory minimum of 180 months' imprisonment. (Tr. 4, May 5, 2004.) Now before the Court is Lebron's petition under 28 U.S.C. § 2255, seeking to vacate his conviction and sentence.

## II.  DISCUSSION

In his petition, Lebron raises two principal challenges to his conviction and sentence. First, he claims that his trial counsel was ineffective for failing to file a notice of appeal, as he had requested. Second, he argues that his guilty plea was not made competently, knowingly, and voluntarily. Since Lebron is proceeding pro se, the Court must grant his papers a "liberal construction," reading them "to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citations and quotation marks omitted). As set forth in the following sections, however, Lebron's § 2255 petition does not withstand scrutiny even when liberally construed. To the contrary, Lebron's petition is time barred because it was not filed within one year of the date his conviction became

final. Moreover, Lebron's substantive claims are in any event
meritless. Therefore, his petition is denied without a hearing.

**A. Lebron's Petition Is Time Barred**

Motions for relief under § 2255 must comply with that
statute's one-year period of limitations. See Moshier v. United
States, 402 F.3d 116, 118-19 (2d Cir. 2005); accord McNeil v.
United States, 508 U.S. 106, 113 (1993) (procedural rules that
apply to civil litigation cannot be interpreted "so as to excuse
mistakes by those who proceed without counsel"). The one-year
limitations period runs from the latest of:

> (1) the date on which the judgment of conviction
> becomes final;
>
> (2) the date on which the impediment to making a
> motion created by governmental action in violation of
> the Constitution or laws of the United States is
> removed, if the movant was prevented from making a
> motion by such governmental action;
>
> (3) the date on which the right asserted was initially
> recognized by the Supreme Court, if that right has
> been newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral
> review; or
>
> (4) the date on which the facts supporting the claim
> or claims presented could have been discovered through
> the exercise of due diligence.

28 U.S.C. § 2255.

Here, Lebron's sentence was entered on May 5, 2004, and
became final ten business days later on May 19, 2004. See
Moshier, 402 F.3d at 118 (holding that "an unappealed federal
criminal judgment becomes final when the time for filing a

direct appeal expires"); Fed. R. App. P. 4(b)(1)(A); Fed. R.
App. P. 26. His § 2255 petition was effectively filed no earlier
than June 14, 2006, when it was apparently delivered to prison
officials for mailing to this Court. See Noble v. Kelly, 246
F.3d 93, 97-98 (2d Cir. 2001) (deeming that pro se prisoner's
writ of habeas corpus is filed upon its delivery to prison
officials for mailing to district court); German v. United
States, 209 F. Supp. 2d 288, 291 (S.D.N.Y. 2002) (applying
"prison mailbox" rule to § 2255 petition). Therefore, Lebron's
petition was filed nearly twenty-five months after his sentence
became final and is not timely under subsection (1) of § 2255.

Furthermore, subsections (2) and (3) of § 2255 are
inapplicable to Lebron's petition. With respect to the former,
Lebron does not allege that the Government erected an
unconstitutional impediment to the filing of his petition. With
regards to the latter, Lebron's petition is based on rights
recognized by the Supreme Court well before Lebron's sentence
became final on May 19, 2004. See, e.g., Roe v. Flores-Ortega,
528 U.S. 470, 477, 483 (2000) (holding that attorney who ignores
specific instruction of client to file notice of appeal, which
leads to forfeiture of appellate proceedings, provides
ineffective assistance of counsel); North Carolina v. Alford,
400 U.S. 25, 31 (1970) ("The standard was and remains whether

the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.").

Moreover, subsection (4) of § 2255 does not save Lebron's petition. That section provides that § 2255's one-year period of limitations runs from the date on which a reasonably diligent person in the petitioner's circumstances would have discovered the facts underlying his petition. Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). Here, Lebron's petition avers that his guilty plea was not given voluntarily and competently, and that his counsel was ineffective for failing to file a notice of appeal. With respect to the former claim, the pertinent facts were known to Lebron, and would have been known to any reasonably diligent person, at the time he entered his plea on February 4, 2004. That is, if Lebron truly did not understand the plea proceedings, as he claims, then he knew of his lack of understanding while those proceedings transpired. In this respect, it is irrelevant for purposes of § 2255's one-year period of limitations that Lebron may not have grasped the legal significance of his lack of understanding. See United States v. Pollard, 161 F. Supp. 2d 1, 10 (D.D.C. 2001) ("[P]aragraph four of § 2255 is only triggered when a defendant discovers facts, not the legal consequences of those facts.").

With respect to Lebron's ineffectiveness claim, the relevant question is when a reasonably diligent person in

Lebron's circumstances would have discovered that his counsel had not filed a notice of appeal. <u>Wims</u>, 225 F.3d at 190. Lebron asserts that he instructed his trial counsel to file an appeal and only learned that she had failed to do so in November 2005, eighteen months after he was sentenced. (Lebron Aff. ¶ 1, June 14, 2006.) Although § 2255's period of limitations could not run from the date Lebron's conviction became final if this assertion were true, <u>see</u> <u>Wims</u>, 225 F.3d at 190, the Court does not credit Lebron's attestation for the reasons stated <u>infra</u> in Part II.B.1.a. Moreover, by entering into the Plea Agreement Lebron knowingly waived his right to appeal any sentence at or below the fifteen-year mandatory minimum stipulated by 18 U.S.C. § 924(e). (Tr. 12, Feb. 4, 2004.) Given Lebron's failure to show that he asked his counsel to file a notice of appeal, and in light of the terms of the Plea Agreement, Lebron had no reason to expect that his counsel would appeal this Court's imposition of a fifteen-year term of imprisonment. <u>Cf.</u> <u>Flores-Ortega</u>, 528 U.S. at 480 (holding that counsel's constitutional duty to consult with the defendant about an appeal extends only to cases in which "there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing"). Lacking any reason to anticipate that his counsel would file a notice of appeal, "due diligence"

required that Lebron investigate the status of his appeal by its due date. Therefore, Lebron was, or should have been, aware that his counsel had not timely filed a notice of appeal by May 19, 2004, the day it was due for filing.

In sum, under subsections (1) and (4) of § 2255, the one-year period of limitations for the filing of Lebron's petition began to run no later than May 19, 2004. That period may be tolled only through a showing that: (1) "extraordinary circumstances prevented [the defendant] from filing his petition on time;" and (2) he "acted with reasonable diligence throughout the period he seeks to toll." Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir. 2003) (quoting Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001)). Here, the record is devoid of any evidence that "extraordinary circumstances" prevented Lebron from timely filing his petition. In fact, the circumstances described in Lebron's Affidavit--i.e., his lack of education, legal expertise, and proficiency in the English language (Lebron Aff. ¶¶ 2, 4-6)--are not extraordinary, but rather, reflect "limitations[] under which numerous *pro se* inmate petitioners suffer." Martinez v. United States, 00 Civ. 1214(DLC), 96 CR. 450-04(DLC), 2000 WL 863121, at *2 (S.D.N.Y. June 28, 2000). Moreover, Lebron has failed to demonstrate that he acted with reasonable diligence during the period he seeks to

toll. Therefore, Lebron is not entitled to the tolling of the limitations period for the filing of his petition.

In light of the foregoing analysis, Lebron was required to file his § 2255 petition by May 19, 2005, one year after the challenged sentence became final. As his petition was not effectively filed until June 14, 2006, at the very earliest, it is untimely and will be dismissed without a hearing.

**B. Lebron's Claims for Relief Are Meritless**

Even if Lebron's petition were not time barred, the Court would deny his request for relief without a hearing because his claims are meritless. In the sections that follow, the Court holds that Lebron's trial counsel, Kirshner, was not ineffective for failing to file a notice of appeal. Furthermore, the Court finds that Lebron's guilty plea was properly accepted.

**1. Kirshner Was Not Ineffective**

To make out a claim for ineffective assistance of counsel, a defendant generally must show that: (1) his counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms; and (2) his counsel's deficient performance was prejudicial. Strickland v. United States, 466 U.S. 668, 688, 692 (1984). Here, Lebron claims that (1) Kirshner's performance was objectively unreasonable because she failed to file a notice of appeal on his behalf; and (2) Kirshner's defective performance was prejudicial, insofar as it

9

denied him his right to appeal. For the reasons that follow, the Court rejects Lebron's arguments, finding that Kirshner's assistance was neither objectively unreasonable nor prejudicial.

### a. Kirshner's Assistance Was Not Objectively Unreasonable

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Flores-Ortega, 528 U.S. at 477 (citations omitted). In the instant case, Lebron asserts that he gave such specific instructions to Kirshner, and that she ignored them, after having expressly agreed to carry them out. (Lebron Aff. ¶ 1.) Clearly, if Lebron's assertions were true, he would have conclusively shown that Kirshner acted in a professionally unreasonable manner. Nonetheless, in a separate affirmation filed with the Court, Kirshner contradicts Lebron's assertions, stating that she does "not believe that Mr. Lebron asked [her] to file an appeal" because she does "not have any specific recollection of such a conversation," and because "it is [her] practice to always file a notice of appeal when directed to do so by a client." (Kirshner Aff. ¶¶ 3-5, Nov. 28, 2006.) In light of Kirshner's Affirmation, and given the other circumstances of this case, the Court declines to credit Lebron's contradicted, self-serving assertion that he asked Kirshner to file a notice of appeal.

District courts may supplement the record with, *inter alia*, affidavits submitted by trial counsel, in order to resolve factual disputes that arise in § 2255 proceedings. <u>Chang v. United States</u>, 250 F.3d 79, 85-86 (2d Cir. 2001); <u>accord</u> <u>Campusano v. United States</u>, 442 F.3d 770, 776 (2d Cir. 2006) (citing <u>Chang</u> for proposition that district court may forego testimonial hearing in cases involving trial counsel's alleged ineffectiveness for failing to file notice of appeal). Here, Kirshner's Affirmation directly undermines the self-serving assertion Lebron made over two years after the fact. Moreover, Lebron's knowing waiver of his right to appeal through his accession to the Plea Agreement supports the proposition that Lebron did not instruct Kirshner to appeal the Court's sentence.[1] Further circumstantial evidence in support of this proposition can be found in the protracted, eighteen-month delay between Lebron's sentencing and his alleged discovery of Kirshner's failure to file a notice of appeal, as well as the strength of the Government's case against Lebron, which rested in part on two separate confessions of guilt. Under these circumstances,

---

[1] That is not to say that Kirshner had no duty to file a notice of appeal if Lebron had so requested. <u>See</u> <u>Campusano</u>, 442 F.3d at 771-72 (holding that counsel is ineffective for failing to file notice of appeal when defendant who had previously waived his right to appeal instructs him to do so). Here, the Court merely reasons that Lebron's waiver of his right to appeal through his subscription to the Plea Agreement is circumstantial evidence of the disputed proposition that he never asked his counsel to file a notice of appeal.

the Court finds, without the need for a testimonial hearing, that Lebron cannot establish that he asked Kirshner to file a notice of appeal. See Chang, 250 F.3d at 86 (no need to hold testimonial hearing that "would not offer any reasonable chance of altering [the Court's] view of the facts"); Lopez v. United States, No. 03 CR. 317(SWK), 2006 WL 2020389, at *2-*3 (S.D.N.Y. July 12, 2006) (finding, in nearly identical circumstances, that defendant had failed to show that he had asked counsel to file notice of appeal, and collecting cases supporting that proposition).

In cases, such as this one, where the defendant has not shown that he instructed his counsel to file an appeal, the question whether counsel has performed deficiently in not filing a notice of appeal turns in the first instance on "whether counsel in fact consulted with the defendant about an appeal." Flores-Ortega, 528 U.S. at 478. "If counsel has consulted with the defendant . . . , [he] performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to [that] appeal." Id. On the other hand, where counsel has not consulted with his client about an appeal, his performance is objectively unreasonable "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular

defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. Here, the record does not reveal whether Kirshner "consulted" with Lebron regarding a possible appeal. As the following discussion demonstrates, however, there is no reason to think either that a reasonable defendant in Lebron's situation would want to appeal this Court's sentence or that Lebron himself desired to file an appeal. Therefore, Kirshner possessed no duty to consult with Lebron regarding an appeal.

On the record before the Court, Lebron has no nonfrivolous issues for appeal. For the reasons set forth infra, Part II.B.2, Lebron competently, intelligently, and voluntarily entered a plea of guilty to the charged offense. Moreover, the Court was bound to sentence him to at least the statutory minimum of fifteen years' imprisonment--the sentence Lebron received--as his counsel duly noted at sentencing. (Tr. 2-3, May 5, 2004.) Although Kirshner mentioned that she might bring a motion to suppress the gun found at Lebron's home, that issue was never briefed, and neither the record nor Lebron provide any indication that a nonfrivolous challenge to the gun's admission as evidence could be made. (Tr. 3, Nov. 19, 2003.) In the absence of a showing that Lebron could raise other nonfrivolous challenges on appeal, the Court determines that a rational

defendant finding himself in like circumstances would not have wanted to appeal.

Furthermore, Lebron's conduct at trial gave no reason to conclude that he would want to appeal his conviction and sentence. To the contrary, Lebron entered into the Plea Agreement, whereby he waived any right to appeal a sentence at or below the statutory minimum for his offense. The Court conveyed to Lebron on two separate occasions that the statutory minimum for his offense was fifteen years. (Tr. 8, 11, Feb. 4, 2004.) Furthermore, Lebron indicated that he was "very happy" with his lawyer, thereby precluding any argument that he would likely want to impugn her representation on appeal, or on collateral review. (Tr. 4, Feb. 4, 2004.) In short, Lebron gave every indication that he would not want to appeal this Court's eventual imposition of a fifteen-year prison sentence.

As there was no reason to conclude either (1) that a rational defendant in Lebron's position would have wanted to appeal, or (2) that Lebron reasonably demonstrated to counsel that he was interested in appealing, Kirshner had no constitutional duty to consult with Lebron concerning an appeal. See Flores-Ortega, 528 U.S. at 480. Thus, assuming, *arguendo*, that Kirshner did not consult with Lebron about an appeal, her performance was not objectively unreasonable as a result.

In summary, since Lebron has not shown that he instructed Kirshner to file a notice of appeal, and because Kirshner had no constitutional duty to consult with Lebron regarding an appeal, Kirshner's failure to file a notice of appeal was not objectively unreasonable.

### b. Kirshner's Assistance Did Not Prejudice Lebron

Even if Kirshner's failure to file a notice of appeal constituted deficient performance, Lebron's ineffectiveness claim would founder because of his inability to show prejudice arising therefrom. Although prejudice is presumed where the defendant specifically instructs his counsel to file a notice of appeal and the latter fails to do so, see Flores-Ortega, 528 U.S. at 483, Lebron has failed to demonstrate that he asked Kirshner to file such a notice. See supra Part II.B.1.a. Under these circumstances, Lebron may demonstrate prejudice only by showing "a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 484.

Here, there is no reason to conclude that Lebron would have wanted to file a notice of appeal. On the contrary, Lebron waived his right to appeal by acceding to the Plea Agreement. Furthermore, as discussed in the preceding section, Lebron lacked nonfrivolous grounds for appealing his conviction and sentence. Therefore, even if Kirshner deficiently failed to

consult with Lebron concerning the appellate process, Lebron suffered no prejudice as a result.

In light of the foregoing, Lebron has failed to show that Kirshner's representation fell below an objective standard of professional reasonableness or was prejudicial. Consequently, his claim that Kirshner was ineffective for failing to file a notice of appeal must be dismissed.

**2. Lebron's Guilty Plea Was Properly Accepted**

Before accepting a defendant's guilty plea, a district court must satisfy itself that the defendant is competent, and that his plea is voluntary and intelligent. <u>Godinez v. Moran</u>, 509 U.S. 389, 400 (1993) (citations omitted). To that end, Federal Rule of Criminal Procedure 11(b) sets forth "detailed procedures . . . for the taking and accepting of guilty pleas." <u>United States v. Adams</u>, 448 F.3d 492, 498 (2d Cir. 2006); <u>United States v. Andrades</u>, 169 F.3d 131, 133 (2d Cir. 1999). Here, the Court complied with the procedures set forth in Rule 11(b) and otherwise ensured that Lebron's plea was competent, knowing, and voluntary at the time it was entered. Nevertheless, Lebron now advances several assertions purporting to show that he was not competent to plead guilty and that his plea was involuntary.

With respect to his competence, Lebron's proffered assertions largely rehash evidence already known to the Court and adequately disposed of at the time of his colloquy. Thus,

Lebron's purported lack of education (Lebron Aff. ¶ 5) and illiteracy (Lebron Aff. ¶ 2) did not render him incompetent to plead guilty, in light of his affirmation that he understood the charges against him and his counsel's statement that she had read both the indictment and the Plea Agreement to him. See LoConte v. Dugger, 847 F.2d 745, 751-52 (11th Cir. 1988) (upholding district court finding that illiterate defendant with below average I.Q. was competent to enter guilty plea). Likewise, Lebron's attested psychiatric condition (Lebron Aff. ¶ 3) does not undermine the Court's determination that he was competent, given the identical conclusion reached by Dr. Drob and Kirshner, Lebron's statement that his medication did not affect his ability to think or function, and Lebron's intelligent responses to the Court's inquiries. See United States v. Morrisette, 429 F.3d 318, 322-23 (1st Cir. 2005) (upholding district court's finding of competence where defendant indicated that his medication did not prevent him from understanding proceedings and otherwise gave intelligent responses to questions posed during his colloquy). Furthermore, Lebron's stated inability to understand certain terms[2] used at the colloquy cannot affect the Court's competency finding because Lebron failed to ask for clarification of these terms

---

[2] These terms include: "competent, elements, incriminate, inference, proceedings, constitution, [and] appeal." (Lebron Aff. ¶ 5.)

even though the Court specifically urged him to do so whenever necessary. (Lebron Aff. ¶ 5.)

With regards to the voluntariness of his plea, Lebron advances several allegations based on the ineffectiveness of his trial counsel that were not previously addressed by the Court. In particular, he alleges that his counsel coerced him into pleading guilty by: (1) withholding information concerning his purported incompetence; (2) instructing him to answer, "Yes," to all of the Court's questions at the allocution; and (3) informing him that he would serve no more than five years' imprisonment if he pleaded guilty. Since the record belies these allegations, the Court abides by its initial finding that Lebron's plea was voluntary.[3]

Respecting Lebron's first allegation, the Court finds that Kirshner did not conceal Lebron's purported lack of competence. In fact, the Court appointed Dr. Drob to evaluate Lebron's competence only upon Kirshner's application. Moreover, Kirshner advocated for Lebron's placement in a medical facility in light of his "severe psychiatric condition." (Tr. 3-4, May 5, 2004.)

---

[3] On the basis of these same allegations, Lebron also claims that his counsel was ineffective. Because the Court finds that these allegations are contradicted by the record, Lebron has made no showing that Kirshner's conduct fell below an objective standard of professional reasonableness. See Strickland, 466 U.S. at 688, 692. (setting forth two-part test for evaluating ineffectiveness claims). Thus, Lebron's ineffectiveness claim also must fail.

Furthermore, Kirshner duly informed the Court of Lebron's illiteracy. (Tr. 11-12, Feb. 4, 2004.)

Lebron's claim that Kirshner instructed him to reply, "Yes," to every question posed during the colloquy is belied by the record, which reveals that Lebron did not answer every query in the affirmative, but rather, responded, "Yes," only when appropriate, given his stated intent to plead guilty.

Finally, in response to Lebron's final allegation, Kirshner has submitted an affirmation in which she states, "I also recall a discussion with Mr. Lebron in which I explained that a term of 15 years' incarceration--the sentence which he received--was the mandatory minimum sentence." (Kirshner Aff. ¶ 4.) Moreover, the Court twice informed Lebron of the fifteen-year mandatory minimum attaching to the charged offense (Tr. 8, 10-11, Feb. 4, 2004.) and Lebron stated at the colloquy that no one had made any prediction or promise concerning his sentence (Tr. 13, Feb. 4, 2004). Given this evidence, as well as the "strong presumption of verity" accompanying Lebron's statements at the colloquy, Blackledge v. Allison, 431 U.S. 63, 74 (1977), Lebron has failed to establish that Kirshner promised he would face no more than five years' imprisonment if he pleaded guilty.

Thus, Lebron's allegations concerning the voluntariness of his plea are contradicted by the record. Absent other evidence of actual or threatened physical harm, or mental coercion that

overbore Lebron's will, his plea was evidently voluntary. See Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988) (citing Brady v. United States, 397 U.S. 742, 750 (1970)).

## III. CONCLUSION

In light of the foregoing, Lebron's § 2255 petition is time-barred and, in any event, fails on the merits. Moreover, since reasonable jurists would not find the Court's resolution "debatable or wrong," either with respect to the procedural issues attendant upon Lebron's claim or the underlying constitutional issues, the Court will not issue a certificate of appealability. Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         April 18, 2007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/18/07

20